UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

FILED
99 SEP 24 PH 2:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

SADIE D. MORGADO, )
    Plaintiff; )
     )
-vs.- ) No. CV-97-P-1912-S
     )
CITY OF BIRMINGHAM; JEFFERSON )
COUNTY COMMISSION; JEFFERSON )
COUNTY; BIRMINGHAM-JEFFERSON
COUNTY EMERGENCY
MANAGEMENT AGENCY,

    Defendants.

ENTERED
SEP 24 1999

## OPINION

The court heard oral argument in this case on December 4, 1998. For the following reasons, summary judgement is due to be granted on all of the plaintiff's claims.

## FACTS[1]

The plaintiff began her employment with the defendant when it was known as the Birmingham-County Civil Defense Corps. That agency is currently known as the Jefferson County Emergency Management Agency ("EMA"). In 1976, the plaintiff was appointed to serve as Director/Coordinator of the EMA by the EMA Mayor's Council. The Mayor's Council formally heads the EMA and consists of the mayors of the jurisdictions which participate in the EMA.

---

[1] The recitation of facts is presented in the light most favorable to the plaintiff.

1

While employed by the EMA, the plaintiff was paid with City of Birmingham paychecks, and was listed on the City's payrolls. The EMA's budget was submitted to the Birmingham City Council. On one occasion, the Mayor of Birmingham directed the plaintiff to transfer staff to the police department, and when she failed to do it, transferred them himself.

While the plaintiff was director, a number of fire chiefs in jurisdictions served by the EMA complained to the Mayor that the EMA duplicated services in areas already served by a fire department. Fire officials resisted the plaintiff's efforts to extend services to hazardous spills in their areas.

In late October 1993, the City of Birmingham terminated its funding for the EMA, and the agency was reorganized. The plaintiff was terminated from her position a week later on November 3, 1993. The defendants later announced that a vacancy to serve as the head of the reformulated agency was available. The plaintiff applied for this position and was rejected. In June 1994, the defendants hired a man named Elwood Odom to 'temporarily' head the agency.

The plaintiff first filed a claim with the EEOC on April 26, 1994 alleging that her termination was motivated by sex discrimination. The plaintiff filed a second charge on June 17, 1994, alleging that she had been discriminated and retaliated against by the defendants when they failed to rehire her. The plaintiff filed claims under Title VII for discrimination on the basis of sex, and for violation of her First Amendment rights under § 1983.

## ANALYSIS

Title VII Claims

Summary judgment is due to be granted on the plaintiff's Title VII claims against all of

2

the defendants. The City of Birmingham, the Jefferson County Commission, and Jefferson County are not her "employer" for Title VII purposes. Her claim against her employer, the EMA, is also is due to be dismissed because the agency did not have the requisite number of employees to create liability under Title VII.

Title VII defines an employer as an entity "engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year..." 42 U.S.C. § 2000e (b). The EMA did not have fifteen employees during the years 1993-1998. The plaintiff argues that the City of Birmingham's and Jefferson County's control over the EMA render them equally her employer under Title VII. The plaintiff argues that the city, the county and the EMA should be considered her employer for the purpose of aggregating the numbers of their employees to get past Title VII's jurisdictional threshold. The law, however, says otherwise.

When this case was briefed and argued, the prevailing law in this circuit was that to determine whether two employers should be treated as a single or joint employer, the district court should look at four "NLRB" factors: (1) the interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930 (11th Cir. 1987). A more recent pronouncement of the appellate court, however, redesigns the standard when the plaintiff sues a governmental employer. See Lyes v. City of Riviera Beach, Florida, 166 F.3d 1332 (1999). In Lyes, the Eleventh Circuit found that substantial deference should be accorded to a state lawmaking body which has determined that state or local entities are separate and distinct. See id. at 1344. A state's declaration that a public entity is separate and distinct amounts to a

3

rebuttable presumption that the entity is indeed separate. The court held that this presumption may be overcome in two instances: (1) where "it is established that a state's purpose in creating or maintaining nominally separate entities was to evade the reach of the federal employment discrimination laws" or (2) "where one entity exerts or shares control over the fundamental aspects of the employment relationships of another entity, to such a substantial extent that it clearly outweighs the presumption that the entities are distinct." Id at 1344, 1345.

The precursor to the EMA was formed in 1951 when the Jefferson County Commission and participating municipalities of Jefferson County agreed to create a Civil Defense Council, pursuant to the Alabama Civil Defense Act of 1951. The Council was composed of the mayors of the respective municipalities and the president of the commission, and it managed an agency called the Civil Defense Corps. In 1955, the Corps was renamed the Birmingham-Jefferson County Emergency Management Agency, and it continues to be governed by a 32-member Mayor's Council. The governing structure of the council and the agency strongly suggest that the EMA was intended to be a multi-jurisdictional agency, separate and distinct from any other state or local government entity. This counsels against aggregating employees of the EMA with those of Jefferson County and the City of Birmingham.

The plaintiff has not submitted evidence to show that she can outweigh the strong presumption against aggregation. The plaintiff alleges that EMA employees are paid with City of Birmingham paychecks, and are listed on the City's payrolls; that EMA employees received City cost-of living increases and had access to the city's pension and retirement system; that she was supervised by the Mayor of Birmingham during tenure as EMA director (Mayor Arrington served as the chair of the EMA Mayors' Council for almost all of her tenure); that the Mayor

4

requested that she transfer EMA employees to the police department; and she received commendations from the City for her work with the EMA .

The standard dictated by the circuit court is whether a factfinder reasonably could conclude that a plaintiff has clearly overcome the presumption. The plaintiff's allegations, stated above, do not rise to the level of control over the "fundamental aspects" of her employment as contemplated by the circuit court. The defendant's motion for summary judgment is due to be granted as to the plaintiff's Title VII claims because her allegations, if true, would not clearly overcome the strong presumption against aggregation.

§ 1983 Claim

The plaintiff also claims that the defendants violated her first amendment rights by retaliating against her for exercising her free speech rights when they failed to rehire her.
Her § 1983 action is subject to Alabama's two-year statute of limitations for personal injury actions. See Wilson v. Garcia, 471 U.S. 261, 279 (1985); Ala. Code § 6-2-38 (1975).

The plaintiff was terminated on November 3, 1993. She interviewed for the newly available position in March, 1998. Defendant EMA hired Odom on June 16, 1994. The defendant's failure to hire the plaintiff as the interim coordinator entitled her to maintain her cause of action at that point. Consequently, her claim is time-barred because she did not file suit until July 25, 1997, three years after Odom was hired. Therefore, summary judgment is due to be granted as to the plaintiff's § 1983 claim.

5

## Conclusion

The defendants' motions for summary judgment are due to be granted as to the plaintiff's Title VII and § 1983 claims, terminating this case. The plaintiff has also filed a Motion to Compel defendants' exhibits; this motion is now moot.

Dated: Sept. 24, 1999

Sam C. Pointer
Chief Judge Sam C. Pointer, Jr.

Service List
  Susan W. Reeves
  Jeffery M. Sewell
  John M. Edens
  Demetrius C. Newton